UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT P. BARRON, ) | 1:08-CV-01063 AWI JMD HC |
| ) | |
| Petitioner, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| v. ) | REGARDING PETITION FOR WRIT OF |
| ) | HABEAS CORPUS |
| WARDEN JAMES D. HARTLEY, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner Robert Barron ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Avenal State Prison, pursuant to a conviction of second degree murder in the Los Angeles County Superior Court. (Pet. at 2-3). Petitioner was sentenced in January 1993 to an aggregate term of nineteen years to life consisting of fifteen years to life for the second degree murder and a consecutive four year sentence for the use of a firearm. (Pet at 3; Answer at 1).

In August 2006, Petitioner appeared before the California Board of Parole Hearing[1] (the "Board") for a parole consideration hearing. (Pet. Mem. P. & A. at 2). The Board found Petitioner unsuitable for parole. (Id).

---

[1] The Board of Prison Terms was replaced, effective July 1, 2005, by the Board of Parole Hearings ("BPH"). *See* In re Olson, 149 Cal.App.4th 790, 793 n. 1 (Cal. Ct. App. 2007). The Board of Parole Hearings has the same duties and functions with respect to adult term setting and parole release decisions as its predecessor. Id. (citing Cal. Penal Code, §§ 5075, 5075.1, 3041, Cal. Gov. Code, §§ 12838, 12838.4, added or amended by (Stats.2005, ch. 10 (Sen. Bill No. 737), §§ 6, 29, 46, 47, pp. 1-21, eff. May 10, 2005, operative July 1, 2005)).

1   Petitioner challenged the Board's denial of parole as violative of his right to due process and
2   sought habeas corpus relief before the Los Angeles County Superior Court. (Answer Ex. 2). The
3   Superior Court, in the only reasoned decision issued in this case, denied Petitioner's request for relief
4   on August 30, 2007. (Id).

5   Petitioner subsequently sought habeas corpus relief before the California Court of Appeal,
6   which summarily denied Petitioner's request on October 26, 2007. (Pet. at 4; Answer Ex. 4).

7   On December 17, 2007, Petitioner filed a petition for writ of habeas corpus with the
8   California Supreme Court. (Answer Ex. 5.) The California Supreme Court summarily denied the
9   petition on June 11, 2008. (Answer Ex. 6).

10  On July 24, 2008, Petitioner filed the instant federal petition for writ of habeas corpus. (Pet.
11  at 1). The petition alleges several violations of Petitioner's right to due process of the law stemming
12  from the Board's denial of parole in 2006.

13  On November 24, 2008, Respondent filed a response to the petition.

## FACTUAL BACKGROUND

15  California regulations permit consideration of the circumstances of the underlying offense in
16  determining whether a prisoner is suitable for parole. *See* Cal. Code Regs., tit. 15, § 2402(c)(1).
17  Thus, the facts of the underlying offense are relevant to the determination of whether Petitioner
18  posed a danger to the public safety. The Board read into the record of the parole hearing the
19  statement of facts from its report, dated September 2005. The portion read into the record,
20  specifically stated:

21  On February 12th of 1992, at approximately 7:30 p.m., Barron entered Sharon's
    parent's house looking for his wife, as she had moved in with her parents due to
22  martial problems. As Barron proceeded to speak with Sharon, he passed the
    witnesses, Sharon's parents, and they noticed that Barron had his right hand in his
23  right pocket. After a short time, Sharon's dad heard her scream, Dad, and heard a
    single gunshot. Sharon's dad opened the door to the bedroom and saw Barron
24  holding a gun. Barron then walked out the front door. Sharon's dad found her lying
    on the bedroom floor and immediately called 9-1-1. Sharon's dad warned his
25  grandson that Barron had a gun. Barron's son stated that his dad, Barron had left the
    house earlier in a depressed mood and returned five minutes later in a very happy
26  mood. He heard Barron go through his master bedroom closet at approximately 7:40
    p.m. He stated later on, the grandmother had called the grandson to let him know that
27  his dad was in their room–in their home. During the conversation, Barron's son heard
    a loud pop and his grandmother yelling. The grandmother then called 9-1-1, and saw
28  Barron return in a vehicle. Barron had the gun in his hand. Barron then entered his

> home with the gun and walked back outside without it. When the arresting unit arrived, Barron made the statement, she was going to leave me. I just lost my head. Meanwhile, Sharon Barron was transported to the hospital and was pronounced dead as a result of a single gunshot wound to the chest.

(Answer Ex. 1 at 126-127). The Board also read into the record Petitioner's version of events, stating that:

> Barron stated on February 12th, I was very depressed. I had just had a birthday on the 10th, and my wife had dinner with me, but left afterwards. She claimed being tired and wanted to go to her parents to sleep. Later I called and she had gone to her friends. Since she moved out, she hadn't allowed me to sit and talk to her. She always put it off until tomorrow with the assurance that everything would be all right. On the 12th, I saw her, but again, she left without talking to me and I went to the garage and drank some more. In my drunken stated, I got the idea to force Sharon to listen to me by scaring her with a gun. I got the gun and went to my in-law's. And by the way, I walked, not drove. When I knocked, Sharon answered and I told her I wanted to talk. She left me into her room and we started talking. As I brought up the subject of why she had left, she got up and said she didn't want to discuss it. At that time, I pulled out the gun. All I remember is that it went off and all I saw was a big flash. I got scared, left the room and went out the front door, jumped the block wall and ran home. When I entered the house, my son wasn't there, so I went to the phone and called my mom. I had called to tell them what happened as I knew I was in trouble because I had shot off the gun. As the time, I didn't know I had shot Sharon. I thought the shot had hit the wall. When the police came, they called me up and they told me to come out with my hands raised. After cuffing me and putting me in the car, they put bags on my hands. The officer asked me what I had been drinking as he said I smelled like a brewery. I said beer and he said more than beer. I never said another word to the officer until 4:00 a.m. I was given a paper to sign and that's when I saw what I was being charged with; murder.

(Answer Ex. 1 at 127-129)

## DISCUSSION

### I.    Jurisdiction and Venue

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. While Petitioner's custody arose from a conviction in the Los Angeles County Superior Court, he is currently incarcerated at Avenal State Prison in Kings County. Kings County is within this judicial district. 28 U.S.C. § 84(b). As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or in the district Petitioner was sentenced, the Court has jurisdiction over the action and is the proper venue. *See* 28 U.S.C. §

2241(d).

## II.     ADEPA Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment.  Lindh v. Murphy, 521 U.S. 320, 326-327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The instant petition was filed in July 2008 and is consequently governed by the provisions of the AEDPA, which became effective April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

While Petitioner is not challenging the underlying state court conviction, Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment.  Thus, 28 U.S.C. § 2254 remains the exclusive vehicle for Petitioner's habeas petition since he satisfies the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting White v. Lambert, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that, "[s]ection 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction'").

Since Petitioner filed his petition after the effective date of AEDPA, his petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."" Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see* Lockyer, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412). "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; *see also* Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See* Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

**III.    Review of Petitioner's Claim**

Petitioner sets forth three grounds for relief, all alleging that the Board's actions violated his

right to due process. Petitioner's first ground for relief alleges that the Board's failure to issue a definitive written statement of reasons constitutes a violation of his right to due process, pursuant to *Kent v. United States*, 383 U.S. 541 (1966). In his second ground for relief, Petitioner asserts that the Board's conclusion was not supported by the evidence. Petitioner's third ground for relief states that the Board's denial of parole was arbitrary.

These claims were presented in a petition for writ of habeas corpus to the Los Angeles County Superior Court, which denied the petition in the only reasoned opinion issued by the state courts. (*See* Answer Ex. 2). In their decision, the Superior Court analyzed the factors the Board relied on in denying parole–specifically, examining the manner in which Petitioner had committed the crime, Petitioner's insufficient participation in self-help and therapy programs, and the psychologist's determination that Petitioner had not yet come to terms with the crime. (Id. at 1-2). The Superior Court also noted the Board's consideration of factors supporting a grant of parole but the court ultimately concluded that there was some evidence to support the Board's "determination that Petitioner presents an unreasonable risk of danger to society and is therefore not suitable for release on parole." (Id. at 2).

The issue was then raised in respective petitions for writ of habeas corpus to the California Court of Appeal and California Supreme Court, both of which summarily denied the petitions. (Answer Exs. 4-5).[2] When reviewing a state court's summary denial of a habeas petition, the Court "look[s] through" the summary disposition to the last reasoned decision. *See* Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have rejected the petition for the same reasons set forth by the California Superior Court. *See* Ylst v. Nunnemaker, 501 U.S. at 803.

As Petitioner's three grounds for relief all allege various violations of his due process rights, the Court addresses these claims together. In the briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole and alternatively, even assuming that such a liberty interest existed, due process merely entitles Petitioner the right to be heard and for the Board

---

[2] Respondent admits that Petitioner's due process claims are timely and that Petitioner has exhausted his state remedies with respect to these claims. (Answer Mem. P. & A. at 2).

to state their reasons for denying Petitioner parole. (Answer Mem. P. & A. at 2-3). Respondent further asserts that the "some evidence" standard does not constitute clearly establish Federal law.

"We analyze a due process claim in two steps. '[T]he first asks whether there exist[s] a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Sass, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, the Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a state's statutory scheme for parole creates a presumption "that parole release will be granted 'when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'" McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole). California Penal Code section 3041 contains the requisite mandatory language, thus vesting in California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Irons, 505 F.3d at 850; *see* McQuillion, 306 F.3d at 903; *see also* Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). Even a prisoner who has not yet been granted a parole date has a constitutionally protected liberty interest in a parole date. Sass, 461 F.3d at 1123. As illustrated in the above Ninth Circuit decisions, and contrary to Respondent's argument otherwise, California prisoners have a protected liberty interest.

However, Respondent is correct in asserting that, notwithstanding a prisoner's liberty interest in a parole date, a parole release determination is not subject to all of the due process protections of an adversarial proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); *see also* Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections as demanded by the particular situations). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987). At a state parole board

proceeding, an inmate is entitled to receive advance written notice of a hearing. <u>Pedro</u>, 825 F.2d at 1399. Additionally, the inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for parole." <u>Greenholtz</u>, 442 U.S. at 16. Here, Petitioner does not allege that he was not told why the Board was denying him parole as such a contention would fail in light of the verbal explanation, provided by the Board at the hearing, of why Petitioner was deemed unsuitable for parole. Rather, Petitioner argues in his first ground for relief that the "[a]bsence of a definitive written statement of the denial of parole" violates his due process rights, pursuant to *Kent v. United States*, as the Board "did not provide a statement of facts motivating these conclusions." (Pet. at 5). Firstly, the Court finds Petitioner's reliance on *Kent* misguided as *Kent* held that a juvenile defendant was entitled to a statement of reasons by the Juvenile Court explaining why the court was transferring jurisdiction for criminal prosecution. <u>Kent</u>, 383 U.S. at 556-557. However, the Court notes that, as stated above, an inmate is not entitled to the full panoply of rights available to a criminal defendant at a parole hearing. *See* <u>Greenholtz</u>, 442 U.S. at 12; <u>Pedro</u>, 825 F.2d at 1399. More importantly, Petitioner has failed to cite authority mandating the Board provide a written statement of reasons in the parole context.

In addition to an explanation as to why Petitioner was unsuitable for parole, advance written notice of a hearing, and an opportunity to be heard at the hearing, the Ninth Circuit has consistently recognized that due process additionally requires that the Board's decision be supported by "some evidence." *See* <u>Irons</u>, 505 F.3d at 851; *also* <u>Sass</u>, 461 F.3d at 1128-1129. "In *Superintendent, Mass. Correc. Inst. v. Hill*, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record.'" <u>Sass</u>, 461 F.3d at 1128 (citations omitted). The Ninth Circuit has held that the same standard of "some evidence" that applies to the revocation of good time also extends to parole determinations. <u>Irons</u>, 505 F.3d at 851. The "some evidence" standard as applied to parole determinations is clearly established federal law, pursuant to the decisions of the Supreme Court. <u>Id</u>.; <u>Sass</u>, 461 F.3d at 1128-1129. This evidentiary standard prevents arbitrary deprivations of the prisoner's liberty interest without imposing undue administrative burdens or threatening institutional interests. <u>Superintendent v. Hill</u>, 472 U.S. 445,

455 (1985). Thus, contrary to Respondent's contentions, the dispositive inquiry before this Court is whether the state court's decision that "some evidence" supported the Board's determination that Petitioner posed a current risk was unreasonable.

This inquiry is framed by the state's statutes and regulations governing parole suitability determinations. Irons, 505 F.3d at 851; Briggs, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see* In re Dannenberg, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; Irons, 505 F.3d at 851-852; Biggs, 334 F.3d at 915-916. The regulation's criteria states that:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); *also* In re Shaputis, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The California Supreme Court recently reiterated that, consistent with California regulations,

the aggravated circumstances of the commitment offense may serve as a basis for denying parole but that:

> [T]he aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

In re Lawrence, 44 Cal.4th 1181,1214 (Cal. 2008).  The *Lawrence* court further clarified that some evidence will support the Board or Governor's reliance on immutable facts, such as an inmate's criminal history or the commitment offense, if those facts support "the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety."  Id. at 1221 (emphasis in original) (holding that relevant inquiry before a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings).  The *Lawrence* court had been faced with a denial of parole resting primarily, if not entirely, upon the commitment offense, which had occurred thirty-six years prior to the denial.  Noting that "all of the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety," the California Supreme Court found that the commitment offense was not probative of petitioner's current dangerousness.  Id. at 1226-1227.  In a companion case, the California Supreme Court found that a failure to gain insight and understanding into the commission of the commitment offense provides some evidence to support a conclusion that the petitioner poses a current risk of danger and is thus unsuitable for parole.  Shaputis, 44 Cal.4th at 1260.

After reviewing the record, the Court concludes that the state court did not unreasonably apply clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  As distinct from *Lawrence*, and more analogous to *Shaputis*, the Board did not solely rely upon Petitioner's commitment offense and the commitment offense, when combined with several other factors, was probative of Petitioner's current dangerousness. Thus, Petitioner has been afforded all of his rights to due process of the law. *See* Sass, 461 F.3d at 1129.  The Board's decision rested on several factors, including: the commitment offense, insufficient participation in beneficial self-help/therapy programs, an

unfavorable psychological report by Dr. Schroeder, and Petitioner's failure to come to terms with his crime. (Answer Ex. 1 at 170-173).

In discussing the commitment offense, the Board noted that the offense was carried out in an especially cruel and callous manner, demonstrating an exceptionally callous disregard for human suffering. (Answer Ex. 1 at 170). State regulations provide that, in determining whether the commitment offense was "especially heinous, atrocious or cruel," the following factors may be considered: multiple victims were attacked, injured or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Cal. Code Regs., tit. 15, § 2402(c)(1). To begin with, there was evidence that the offense was committed in a calculated manner insofar as there was evidence presented at the hearing that Petitioner broke into a safe with a screw driver to retrieve the gun, loaded the gun, and then fired the weapon at extremely close range at the victim. (*See* Answer Ex. 1 at 163 and 171). Secondly, the facts presented to the Board demonstrated a callous disregard for human suffering as Petitioner brought a loaded gun to the victim's location to scare the victim and then shot the victim at close range in her place of residence, prompting the Board to state, "[c]learly, this crime shows a lack of regard, again, for the life and suffering of another individual." (Id. at 171). Lastly, while the Board noted that the motivation for crime, be it jealousy or the victim's affair, was trivial. (Id. at 170). The Board's conclusion that Petitioner's jealousy or an affair motivated the commitment offense is supported by Petitioner's statements recorded in the psychological report, wherein Petitioner admitted to being "suspicious and jealous." (Pet. Ex. B-1 at 4).

The Court notes that while the Board's conclusion of unsuitability was not based solely on Petitioner's commitment offense, the application of existing authority within the Ninth Circuit necessitates a finding that sole reliance on Petitioner's commitment offense by the Board does not violate his right to due process. The Ninth Circuit in *Irons* found that a parole board's sole reliance on the commitment offense comports with the requirements of due process where the board's

1  determination of unsuitability came prior to the prisoner serving the minimum number of years
2  required by his sentence. Irons, 505 F.3d at 853. Here, Petitioner was convicted on December 2,
3  1992 and sentenced to an aggregate term of nineteen years to life. (Pet. at 2). Petitioner will have
4  served the minimum number of years required on his sentence in late 2011. Consequently, the Court
5  would be compelled to reject Petitioner's claim, pursuant to the Ninth Circuit's holding in *Irons* and
6  *Sass*, even if the Board had relied solely on static factors in determining Petitioner was unsuitable for
7  parole.
8         While the Board relied upon the commitment offense, the factor the Board seems to have
9  weighed most heavily in finding Petitioner unsuitable for parole was Petitioner's lack of insight into
10 and failure to come to terms with his crime. The Board stated in their decision that, "there is a need
11 to explore the issues regarding the–your commitment offense; come to terms with the crime."
12 (Answer Ex. 1 at 175). The Board's conclusion rested on their finding that the psychological
13 evaluation was not entirely supportive of release. The psychological report, as read it into the record
14 at the hearing by the Board, noted that Petitioner posed a below average risk of dangerousness when
15 compared to the parolee population but also stated that Petitioner had not come to terms with his
16 crime, did not recognize the causative factors of the crime, and contradicted himself in stating that he
17 was just trying to scare his wife when he brought a loaded gun to her location. (Id. at 146-147). Dr.
18 Schroeder's psychological report noted that Petitioner specifically identified alcohol as the causative
19 factor for the crime, thus ignoring the actual causes of the crime which were Petitioner's inability to
20 accept the end of his marriage and the resulting damage to Petitioner's self-esteem, and Petitioner's
21 anger regarding the marriage's disintegration. (Pet. Ex. B-1 at 5). Additionally, Dr. Schroeder's
22 conclusion that Petitioner had not come to terms with the crime stemmed from her observation that
23 Petitioner provided a contradictory justification for bringing the gun, claiming that he was merely
24 attempting to scare his wife even though he loaded the gun. (Id. at 4). As the California Supreme
25 Court noted, a lack of insight into and failure to take responsibility for the commitment offense are
26 factors that may constitute "some evidence" supporting a Board's denial of parole. Shaputis, 44
27 Cal.4th at 1260. Akin to *Shaputis*, the information provided at the parole hearing was sufficient to
28 constitute some evidence of Petitioner's current dangerousness.

1    In his second ground for relief, Petitioner objects to the Board's characterization of the report, arguing that the evidence fails to support such a conclusion as Dr. Schroeder's report stated that Petitioner's risk of dangerousness is below average. (Pet. at 5). "The requirements of due process are satisfied if some evidence supports the decision...Ascertaining whether this standard is satisfied does not require an examination of the entire record, independent assessment of the credibility of witnesses, or *weighing of the evidence*." Hill, 472 U.S. at 455 (emphasis added); *see also* Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994) (finding that court cannot re-weigh the factors supporting parole suitability and the factors supporting parole unsuitability). As such, the Court declines to re-weigh the evidence to determine whether the Board's characterization of the evidence is accurate though the Court notes that Board's findings are adequately supported by Dr. Schroeder's report.

Another factor the Board relied upon in finding Petitioner unsuitable for parole was insufficient participation in self-help programs since the last denial of parole in 2004. The record of the hearing reveals that while Petitioner was currently participating in Alcoholics Anonymous, Petitioner responded negatively when asked what self-help or group programs he had completed since 2003. This lack of participation in self-help programming lead the Board to conclude that Petitioner was a "little weak" in this area. (Answer Ex. 1 at 141-142). The Board's reliance on the commitment offense did not violated Petitioner's right to due process as this factor when considered with Petitioner's psychological report, revealing that Petitioner had failed to come to terms with and gain insight into the crime, and Petitioner's lack of participation in self-help programming between parole hearings, was still probative of Petitioner's current dangerouness. *See* Shaputis, 44 Cal.4th at 1258-1261. Thus, there "some evidence" to support the decision that Petitioner posed a current unreasonable risk of danger to the public and the Board's denial was neither arbitrary, as Petitioner contends in his last ground for relief, nor was the state court's application of clearly established law unreasonable. Consequently, Petitioner's request for habeas corpus relief must be denied.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for Respondent.

1    This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United
2 States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304
3 of the Local Rules of Practice for the United States District Court, Eastern District of California.
4 Within thirty (30) days after being served with a copy, any party may file written objections with the
5 court and serve a copy on all parties.  Such a document should be captioned "Objections to
6 Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and
7 filed within ten (10) court days (plus three days if served by mail) after service of the objections.
8 The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The
9 parties are advised that failure to file objections within the specified time may waive the right to
10 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

12 IT IS SO ORDERED.
13 **Dated:     January 15, 2009**             /s/ John M. Dixon
                                               UNITED STATES MAGISTRATE JUDGE